UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 69TH TENANTS CORP.,<br><br>*Plaintiff*,<br><br>-*against*-<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>*Defendant.* | Case No.  23-9220<br><br>**COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff 69th Tenants Corp. ("Plaintiff" or "69th Tenants"), as and for its complaint against Defendant ACE American Insurance Company ("Defendant" or "ACE"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff 69th Tenants brings this action to enforce its right to coverage, under a Premises Pollution Liability Policy (the "Policy"), for losses arising out of a leak from oil storage tanks (the "Oil Tanks") located in the basement of 69th Tenants' property at 150 E. 69th Street, New York, New York (the "Building").

2. The insurer, Defendant ACE, improperly denied coverage based on an inapplicable exclusion for losses arising from "pollution conditions" emanating from an "underground storage tank" (or "UST")—a defined term under the Policy.

3. As explained below, the exclusion does not apply to 69th Tenants' claim because the Oil Tanks are not "underground storage tanks" as defined by the Policy.

4. ACE attempts to broaden the exclusion by applying a different regulatory definition of UST that is not incorporated or even referenced in the Policy.  Of course, 69th Tenants' claim must be assessed according to the actual language of the Policy ACE drafted.  The application of an extra-contractual definition to expand the scope of an exclusion is particularly inappropriate

1

given the bedrock principle that an insurance policy's exclusionary language must be construed narrowly in favor of coverage.

5. By this action, 69th Tenants seeks (a) a declaration regarding 69th Tenants' rights and ACE's obligations under the Policy; and (b) compensatory damages for amounts owed by ACE under that policy.

## PARTIES

6. Plaintiff 69th Tenants Corp. is a corporation organized under the law of the State of New York.

7. Defendant ACE is an insurance company organized and registered in the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over Plaintiff's claims based upon the diversity of citizenship of the parties, since Plaintiff 69th Tenants is a New York corporation, and Defendant ACE is an insurance company based in Pennsylvania, with its headquarters in Philadelphia. Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant ACE, pursuant to N.Y. C.P.L.R. § 302(a)(1), because ACE transacted business in New York by issuing an insurance policy to Plaintiff in the state, covering, *inter alia*, losses from property damage at Plaintiff's Building in New York City.

10. Venue is proper in this District, under 28 U.S.C. § 1391(b)(2), because a "substantial part of the events or omissions giving rise to the claim occurred" in the District, and the "property that is the subject of the action is situated" there.

**FACTUAL ALLEGATIONS**

**The Policy**

11. In 2022, ACE issued the Policy to 69th Tenants, covering the policy period July 13, 2019 to July 14, 2022. A true and correct copy of the Policy is attached as **Exhibit 1**.

12. The Policy covers, *inter alia*, "'first-party claims' arising out of . . . a 'pollution condition' on, at, under or migrating from a 'covered location.'" Policy § I(A) & Endorsement No. 9.

13. A "pollution condition" is defined as:

> The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste materials, 'low-level radiation waste, "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

*Id.* § V(LL)(2).

14. The Policy provides up to $3 million in coverage for losses, including "first-party remediation costs"—*i.e.*, costs "incurred to investigate, quantify, monitor, remove, dispose, treat neutralize, or immobilize 'pollution conditions'," as required by applicable environmental laws, as well as "reasonable any necessary expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a 'pollution condition'." *Id.* § V(V), (NN).

15. The Policy's Underground Storage Tanks exclusion (the "UST Exclusion"), eliminates coverage for:

> "Loss" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person":

3

1. Prior to the "policy period"; or,

2. Solely with respect to "underground storage tanks" situated at "covered locations" added to this Policy during the "policy period", prior to the effective date of coverage or such "covered location".

This exclusion shall not apply to any "underground storage tank" that:

1. Is identified on the Schedule of Underground Storage Tanks Endorsement or Schedule of Covered Storage Tanks (Financial Responsibility) Endorsement attached to this Policy, if any; or

2. Has been removed or closed-in-place prior to the inception date of this Policy and such removal or closure was conducted in accordance with "environmental law".

*Id.* § VI(O).

16. "Underground storage tank" (or "UST") is defined as a tank having "more than ten percent (10%) of its volume below ground." *Id.* § V(UU). However, this general definition is subject to a carve-out: "'Underground storage tank' does not mean . . . [a]ny tank that is located below ground, provided that such tank is located on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel." *Id.*

17. Therefore, despite being "located below ground", a tank is *not* an "underground storage tank," as defined by the Policy, if it is situated "on or above the floor of a basement in a building or on or above the floor of any shaft or tunnel."

**69th Tenants' Loss**

18. The Building had two Oil Tanks that were housed in a vaulted storage area within the Building's basement, where they were packed with rocks and dirt.

19. The floor of the storage vault is contiguous with the rest of the basement floor, where the Building's boilers, chillers and other mechanical equipment are located. Thus, the Oil Tanks were "located on or above the floor of a basement," or alternatively, were located "on or above the floor of a[] shaft or tunnel."

20. On August 3, 2021, 69th Tenants was notified that the Oil Tanks were leaking. The spill was reported to the New York State Department of Environmental Conservation ("NYSDEC"), which assigned a "spill number" and required 69th Tenants to take appropriate remedial action by either abandoning the tanks in place or completely removing them.

21. 69th Tenants gave timely notice to ACE of its claim under the Policy for losses resulting from the leak.

22. Working in collaboration with NYSDEC and with ACE and its advisors, 69th Tenants' engineering consultant determined that removing the Oil Tanks was the fastest and most cost-effective method of remediation. This plan was reviewed by NYSDEC and approved by all parties as the appropriate remedial action.

23. To date, 69th Tenants has incurred costs in excess of $1,017,647 to remediate the pollution condition. And it expects to spend an additional $300,000 to $500,000 to restore the space and bring it into a usable and code-compliant condition.

**ACE's Wrongful Denial of Coverage**

24. ACE worked closely with 69th Tenants and its advisors during the removal process, but ultimately denied coverage for 69th Tenants' losses based on the false contention that "the [Oil] Tanks constitute USTs and thus the UST Exclusion applies."

25. ACE's denial of coverage cannot be squared with the plain language of the UST Exclusion.

26. The Policy's definition of "underground storage tank" excludes "any tank that is located below ground, provided that such tank is located on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel." Policy § V(UU). The Oil Tanks that caused 69th Tenants' loss fall squarely within this carve-out from the UST Exclusion, since the

vault floor above which they were situated is contiguous with the basement floor. The fact that the tanks were "buried in dirt" within the vault is immaterial, as they were nevertheless indisputably "located on or above the floor of a basement or on or above the floor of any shaft or tunnel." The Policy requires nothing more.

27. Rather than applying the actual terms of the Policy it wrote, ACE relies on a different definition of "underground storage tank" found in NYSDEC regulations that were not incorporated or even referenced in the Policy. While ACE contends the regulatory definition of "UST System" "mirrors" the Policy's definition of an "underground storage tank," the two definitions, in fact, differ substantially.

28. The NYSDEC regulation excludes from its definition of "UST System," "a tank system situated in an '**accessible underground area**'," including "an underground area—such as a basement, cellar, shaft or vault—that **allows for the physical inspection of the exterior of the tank.**" 6 NYCRR § 613-1.3 (emphasis added). The Policy, by contrast, makes no reference to "accessibility" or the ability to conduct a "physical inspection." Instead, under the Policy's plain language, the only relevant factor is the tank's location "on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel." Where that single condition is satisfied—as it is here—the tank is not an "underground storage tank," and the UST Exclusion is inapplicable.

29. 69th Tenants responded to the wrongful denial of its claim, explaining that ACE's substitution of a regulatory definition of UST for the Policy's definition was improper, and when the correct definition is applied, it is clear that the UST Exclusion is irrelevant to 69th Tenants' claim. However, ACE refused to reconsider its position.

30. 69th Tenants was, accordingly, compelled to bring this action to enforce its rights under the Policy.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment – 28 U.S.C. § 2201)**

31. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

32. An actual controversy of a justiciable nature exists between 69th Tenants and ACE as to the proper construction and interpretation of the Policy in relation to insurance coverage for the losses described herein. In particular, the parties dispute the Policy's definition of UST and the application of the UST Exclusion to 69th Tenants' losses.

33. 69th Tenants is entitled to a declaration of its rights, and of ACE's corresponding duties, under the Policy in regard to the losses claimed herein.

34. 69th Tenants seeks a judicial determination resolving all disputes between 69th Tenants and ACE regarding coverage for the losses claimed herein.

35. The issuance of declaratory relief will terminate all or most of the controversy between the parties as to coverage under the Policy for 69th Tenants' losses.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

36. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs with the same force and effect as if more fully set forth herein.

37. ACE has breached its contractual obligations under the Insurance Policy to provide coverage for 69th Tenants' losses claimed herein.

38. 69th Tenants has complied with all its obligations under the Policy.

39. As a direct and proximate result of ACE's breach of the Policy, 69th Tenants has incurred and will continue to incur damages in an amount to be proven at trial but no less than $1,500,000.

**WHEREFORE**, 69th Tenants requests that the Court enter judgment in favor of 69th Tenants and against ACE:

1. Declaring that 69th Tenants is entitled to coverage under the Policy for the losses claimed herein;

2. Awarding damages to 69th Tenants in an amount to be proven at trial, but no less than $1,500,000, together with costs, including reasonable attorneys' fees, and pre- and post-judgment interest thereon; and

3. Awarding such other relief to 69th Tenants as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: October 19, 2023
New York, New York

**Respectfully submitted,**
**HOGUET NEWMAN REGAL & KENNEY, LLP**

By: _____
Bradley J. Nash
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
Phone: 212-689-8808

*Attorneys for Plaintiff 69th Tenants Corp.*